[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This limited contested dissolution of marriage action having a return date of July 19, 1999, was tried to the court on October 4, November 20, 21, December 1, and December 18, 2000. The court finds that the parties were married on September 16, 1989 in Oxford, Connecticut and there were two minor children born issue of the marriage; Christopher John Gittings born June 18, 1990 and Justin Gabriel Gittings born April 1, 1993. The marriage between the parties has broken down irretrievably and it is ordered dissolved on the grounds of irretrievable breakdown. CT Page 2771
The plaintiff wife is 37 years old and is a high school graduate. Prior to her marriage she worked for several years at Sikorsky Aircraft. She left Sikorsky Aircraft to join the Air force where she served for approximately 18 months and was honorably discharged. While in the military, stationed in Grand Forks, North Dakota, she married the defendant.
While the couple lived in North Dakota the husband attended farrier school to learn the horseshoing trade. When the couple returned to Connecticut in 1990, the plaintiff worked at Sikorsky Aircraft until she accepted a voluntary layoff in 1996. In 1995 she earned $31,000 from Sikorsky Aircraft. The plaintiff is presently employed 30 hours per week as an administrative assistant earning $11.50 an hour with average gross wages of $391 a week. From her service at Sikorsky Aircraft she has a savings plan, accumulated during the marriage, valued at approximately $8,200, and a monthly pension benefit, available when she attains age 65, of $354.
The defendant husband is 42 years of age and is a high school graduate. Prior to marrying the defendant he also worked at Sikorsky Aircraft. When the couple returned to Connecticut in 1990 he began work as a farrier's helper and then went into business for himself. From his service at Sikorsky Aircraft the husband is entitled to a pension, presumably at the age of 65, in the amount of $214 a month. Considerable time was spent by both parties producing evidence regarding the defendant's income and/or earning capacity which will be addressed later in this decision.
In June 1993 the couple purchased the marital home located as 11 Golden Circle, Seymour for $180,000. The down payment of $36,000 was funded by a gift of $10,000 from the plaintiff's mother and $26,000 in savings derived from the plaintiff's employment at Sikorsky Aircraft during the marriage. In 1995 the defendant had the opportunity to buy certain "barn accounts" for the sum of $10,000, which accounts would substantially increase the defendant's income and allow the plaintiff to stay at home with the children. These accounts were purchased with $10,000 taken from the plaintiff's 401k plan. During 1996 and 1997 the plaintiff received an inheritance and beneficiary accounts from her mother totaling approximately $119,000. The plaintiff used $10,000 of this inheritance as a down payment on the 1995 Ford F-350 truck, purchased in 1998, that the husband uses in his business. The plaintiff used approximately $50,000 of her inheritance to build a six-stall horse barn adjacent to the marital home; however, the appraisal indicates that this structure adds only $20,000 to the value of the property. The parties have stipulated that the marital home has a value, in accordance with the appraisal submitted, of $215,000 and is encumbered by a mortgage in the approximate CT Page 2772 amount of $131,000. The parties separated in September 1999.
The parties have submitted the issue of possession of certain horses to the court. The plaintiff and the defendant each own two horses and each of their sons owns his own horse.
The parties owe taxes, penalties and interest on their 1995 and 1996 Federal income tax returns. The tax due on the 1995 return was originally $22,934. Several payments were made, including a $10,000 payment by the plaintiff and a $5,000 payment by the defendant, and as of October 30, 2000 there is a balance of $4,877.81 due. On the 1996 Federal tax returns $43,619 of the wife's inheritance was included as taxable income and the tax originally due on that return was $24,276. In 1997, when the 1996 return was filed, a $15,000 payment from the plaintiff's funds accompanied the return. The balance due on the 96 return with taxes, penalties and interest is $23,636.51 as of October 30, 2000. In 1995 and 1996 no estimated quarterly tax payments on the defendant's self employment income were made.
The plaintiff has recently filed Federal tax returns for 1997, 1998 and 1999, using a filing status of married filing separate return, in which she reports only her income. The defendant has not filed a Federal tax return for 1997, 1998 and 1999; however, he submitted proposed returns for those years to the court. The defendant originally had his accountant prepare joint returns for those years, but, upon learning of the plaintiff's filing, he instructed his accountant to prepare married filing separate returns. The defendant has made no estimated quarterly tax payments for the years 1997, 1998 and 1999. The defendant's proposed Federal and Connecticut tax returns, married filing separately, show the following tax liability: For 1997 $10,972, for 1998 $5,850, for 1999 $6,984; these amounts are without penalties and interest.
As stated, the defendant is a self-employed farrier doing business as Gittings Son Horseshoing and he keeps his own records. The plaintiff disputes the income shown on the defendant's financial affidavit and claims that the defendant is capable of earning more money than is shown on the affidavit. The defendant kept track of the dates and charges of his services by making entries in appointment books. The books for 1993, 1994, 1995, 1997 and 1998 were introduced by the plaintiff since she had them in her possession. The 1996 appointment book was introduced by the defendant.
The defendant did not comply with a discovery request to produce his 1999 appointment book, although it was in his possession, and he did not comply with the discovery requests to produce receipts and other proof of the expenses of his business. CT Page 2773
On his financial affidavit the defendant states a gross weekly income of approximately $1,500, or $78,000 per year. He also states, in addition to his customary tax deductions, a deduction for "supplies" of approximately $175 a week. These deductions result in a net weekly wage of $839 shown on his affidavit. It is significant to note that the defendant's attorney prepared and submitted a child support guideline worksheet which shows a gross income of $1,500 per week and a net income of $1,037 per week. This worksheet did not contain a deduction for "supplies."
The defendant asked his accountant, James Schofield CPA, to prepare the proposed tax returns for 1997, 1998 and 1999. Mr. Schofield testified that he prepared those returns with information orally provided by Mr. Gittings. The defendant did not provide any information in writing to Mr. Schofield nor did he provide the receipts, checks, or other evidence of the income and expenses he claimed on the proposed returns.
The plaintiff, who has bookkeeping and computer skills, reviewed the appointment books for 1998 and 1997 and prepared a listing of the billings the defendant could produce utilizing the number of horses the defendant serviced and the estimated times per year the services would be necessary. Mr. Ken Pia CPA, testified, on behalf of the plaintiff, as to the defendant's earning capacity. He reviewed the listing prepared by the plaintiff, invoices for the defendant's horseshoe purchases and the defendant's proposed tax returns. Utilizing this information he estimated the normalized net cash flow for the horseshoing business for 1997, 1998 and 1999; all of his calculations are summarized in Plaintiff's Exhibit 42. Based on his evaluation, Mr. Pia testified that the defendant had an earning capacity of $88,000 per year. The court believes that the listing prepared by the plaintiff, and reviewed by Mr. Pia may have overstated the defendants potential billing income. For this reason the court does not adopt Mr. Pia's estimate of earning capacity; however. Mr. Pia's estimate supports the court's independent finding of the defendant's earning capacity.
Considering all of the testimony, and after reviewing the appointment books, the court concludes that the amounts shown on the defendant's financial affidavit for his gross income and net income are not credible. Based upon a review of the appointment books for 1996, 1997 and 1998 the court concludes that for those years the defendant's business had an average gross income of $100,000 annually. The defendant testified that supplies, in general, represented approximately 10% of the cost of his charges. This would result in the cost of supplies being approximately $10,000 per year. The court also finds that the defendant drives, in the course of his business, between 25,000 and 30,000 miles CT Page 2774 per year Applying the IRS mileage allowance of .32 cents per mile to the average annual mileage of 27,500 results in an expense of approximately $9,000. Although the defendant has not complied with discovery requests to show proof of his expenses, the court concludes that an additional $1,000 per year in expenses is reasonable. Thus, the total cost of doing business is approximately $20,000 per year, resulting in average earnings of $80,000 per year which the court finds to be the defendant's earning capacity.
Both parties blame the other for the breakdown of the marriage. From the evidence presented, the court finds that both parties contributed equally to the breakdown of the marriage.
The plaintiff resumed employment after a child raising hiatus in November 1999. She presently works 30 hours a week and has shared custody of the minor children. The court believes that a four year period of rehabilitative alimony is appropriate. During this time the children, who are now ten and seven, will become more self-reliant and the plaintiff can transition to full-time employment.
In crafting the mosaic of financial orders in this case the court utilized FinPlan. A copy of the cash flow and support report incorporating the parties income and the court's orders is attached as Exhibit A. Having considered the issue, the court declines to enter an order regarding the log splitter the couple formerly owned.
The court has considered the provisions of General Statutes § 46b-81
and § 46b-82 and enters following orders:
1. Parties shall share joint legal and physical custody of the minor children in accordance with the agreement entered as a final order of this court on December 21, 1999.
2. The defendant shall pay to the plaintiff child support in the amount of $100 per week. The court will deviate from the recommended child support amount because the parties share physical custody. The plaintiff shall be entitled to claim the oldest child as a dependent and the defendant shall be entitled to take the youngest child as a dependent.
3. The defendant shall provide and pay for medical insurance for the minor children. If either party shall have the ability to obtain medical insurance through their employment at a reduced cost or at no out-of-pocket cost such insurance shall be instituted within 30 days of eligibility. An out-of-pocket cost shall be divided equally between the parties. CT Page 2775
4. The defendant shall pay to the plaintiff $250 per week as alimony. The alimony shall terminate upon the death of either party, the plaintiff's remarriage or cohabitation within the provision of General Statutes § 46b-86b, or February 16, 2005 which ever shall occur first. Unless terminated as provided for herein, the duration of alimony shall be non-modifiable.
5. The plaintiff is ordered to maintain her present life insurance for the benefit of the minor children. The defendant is ordered to maintain life insurance upon his life in the amount of $100,000 for the benefit of the minor children. The defendant is further ordered to maintain life insurance on his life in the amount of $50,000 for the benefit of the plaintiff so long as he has an obligation to pay alimony.
6. The defendant shall quitclaim his interest in the marital home located at 11 Golden Circle, Seymour to the plaintiff and contemporaneously the plaintiff shall execute a mortgage deed and note upon the property to the defendant in the amount of $25,000. Said note shall be without interest and shall be payable upon the plaintiff's death, remarriage, cohabitation within the provisions of General Statutes § 46b-86 (b). sale of the property, or October 1, 2011 which ever shall occur first. The plaintiff is to hold the defendant harmless from any liability from the first mortgage upon the premises.
7. The plaintiff shall retain her UTC retirement fund 401k and pension. The defendant shall retain his Sikorsky pension and AIM Safety Company stock.
8. The plaintiff shall be solely responsible for the taxes penalty and interest due on the parties 1995 joint Federal tax return and shall hold the defendant harmless from any liability thereon. The defendant shall be responsible for the taxes penalty and interest due on the parties 1996 joint Federal tax return and shall hold the plaintiff harmless from any liability thereon.
9. The defendant shall be solely responsible for any taxes penalties and interest due on his 1997, 1998 and 1999 Federal and Connecticut income tax returns.
10. Except as specifically provided herein, the parties shall be each responsible for the liabilities listed on their respective financial affidavits and shall indemnify and save each other harmless therefrom.
11. The parties are to be equally responsible for payment of all of the fees for the attorney for the minor children. The parties shall pay any amount due on their respective shares within 90 days of the date of CT Page 2776 judgment.
12. Each party shall be responsible for their respective counsel fees.
13. The defendant shall retain his interest in Gittings Son Horseshoing.
14. The plaintiff is ordered to transfer her interest in the following motor vehicles to the defendant: (A) 1995 Ford F-350; (B) 1986 Jeep J-20; (C) 1973 Jeep Wagoner. The defendant shall be responsible for, and hold the plaintiff harmless from any liability for, property taxes due on any of said motor vehicles.
15. The defendant shall be entitled to possession of the Coca-Cola machine.
16. The plaintiff shall be entitled to retain the diamond engagement ring and satellite system for T.V.
17. If he has not done so, the defendant is ordered to remove his two horses from the marital home property within 30 days. Christopher Gittings' horse, Tuff-To-Please a/k/a Curly, is to be returned to the barn at the marital home within 10 days of judgment. As part of their joint parenting responsibilities the parties are directed to discuss, with their children, where the children would like their respective horses kept. Where possible the children's preferences should be followed.
18. The plaintiff is restored her maiden name of Elizabeth Politis.
Domnarski, J
 Gittings v. Gittings Docket No. FA 99-0427768 Exhibit "A"
Cash Flow SupportAnnual Amounts 2000 Last Name gittings gary eliz Total
1 Salary 0 20,332 2 Self-Employment Income 80,000 0 3 Social Security Inc 0 0 4 Interest and Dividends 0 0 5 Tax Exempt Interest 0 0 6 Other Taxable Inc 0 0 7 Other Nontaxable Cash 0 0 CT Page 2777 8 Cash Perks 0 0
9 Total Gross Cash 80,000 20,332 100,332Allowed Deductions
10 Fed Inc Tax (Excl Tax on Alimony) 14,129 (82) 11 State Inc Tax (Excl Tax on Alimony) 3,196 158 12 Local Income Tax 0 0 13 Social Security Tax 9,161 1,260 14 Medicare Tax 2,143 295 15 Mandatory Pension 0 0 16 Health Ins not Child 0 0 17 Union Dues Other Deduct 0 0 18 Prior Support Paid 0 0 19 Imputed Spt-Qualified Child 0 0
20 Total Deductions 28,629 1,631 30,260 21 Net Cash for Support 51,371 18,701 70,072 22 Child Support (5,200) 5,200 23 Alimony (13,000) 13,000 24 Non-taxable Maintenance 0 0
25 Cash After Support 33,171 36,901 70,072 26 Other Cash Item (Addition) 0 0 27 Voluntary Pension 0 0Tax Impact of Alimony
28 F. 3,664 (3,082) 582 29 State 585 (925) (340)30 Cash to Meet Living Expenses 37,420 32,894 70,31431 Monthly Cash 3,118 2,741 5,859
32 Required Cash — Budget 0 0 033 Cash Over (Under) Budget 3,118 2,741 5,859
34 % Share Cash 53% 47% 100% 35 Filing Status Single Single 36 Children 17 Over 0 0 37 Children Under 17 1 1 38 Value Child Dep Exemption 784 420 39 Value Under 17 Child Cr 500 500 40 Value of Both 1,284 920 41 Marginal Federal + St. Tax % 32.5% 19.5% 42 Children Residing With 0 2 43 Guideline Child Support (14,040) 14,040
Tax Impact of Alimony has NOT been included in computing guideline child support February 7, 2001 03:10 PM
(C) Copyright 1990, 2000 by FinPlan Co. All rights reserved.